Motor Vehicle Retail Installment Contract – Illinois– with T-I-L Disclosure
Simple Interest–Fixed Rate

Stock Form No. IFI-26 (Rev. 7/11)
Copyright 2011, ILLIANA FINANCIAL, INC. Elmhurst, IL (All Rights Reserved)

Reorder from ILLIANA FINANCIAL, INC. P.O. Box 1127
Elmhurst, IL 60126, (630) 941-3838

## RETAIL INSTALLMENT CONTRACT – MOTOR VEHICLE – SIMPLE INTEREST    No. 100001114422

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $2500.00 |
| 18.750 % | $ 10506.00 | $ 15316.80 | $ 25822.80 | $ 28322.80 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 358.65 | monthly beginning 06/10/2014 |
| N/A | $ N/A | N/A |

Security: You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

Late Charge: If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less.

Prepayment: You have the right to prepay the unpaid balance in full or in part at anytime without penalty.
See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

### Itemization of Amount Financed

| | |
|---|---|
| Cash Price | $ 13500.00 |
| Less Cash Downpayment | $ 2500.00 |
| Value of Trade-In | |
| Trade $ | N/A |
| Lien Payoff $ | N/A |
| To: N/A  Trade $ | N/A |
| Amounts Paid on Your Account | |
| Unpaid Balance of Cash Price | $ 11000.00 |
| Amount Paid to Others for You | |
| *WE MAY BE RETAINING A PORTION OF THIS AMOUNT | |
| Unpaid Balance Due on Trade-In | $ N/A |
| Year, Make, Model of Buyer's Trade-In N/A | |
| (Paid to) N/A | |
| *Insurance Companies: | |
| N/A | $ N/A |
| N/A | $ N/A |
| PARTNERS GAP | $ 800.00 |
| Public Officials (Licenses, Title & Taxes) | $ 1325.53 |
| *Paid to ERT Service Provider for Optional ERT Fee | $ 25.00 |
| · To  DOC FEE | $ 165.27 |
| · To  COMPASS | $ 2000.00 |
| · To  N/A | $ N/A |

Buyer(s) NATHAN THOMAS   2515 SCOVILLE AVE   BERWYN   IL   60402
   (Names)         (Residence Address)         (City)   (State)   (Zip)

Buyer(s) N/A
   (Names)         (Residence Address)         (City)   (State)   (Zip)

Seller AL PIEMONTE SUZUKI   401 EAST NORTH AVE   NORTHLAKE   IL   60164
   (Corporate Firm or Trade Name)   (Business Address)   (City)   (State)   (Zip)

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | No. Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2013 | DODGE | AVENGER | 4DR SDN | 4 | 1C3CDZAB0DN564489 | GRAY | SE | N/A |

Buyer Promises to pay to the order of Seller at the offices of:
GLOBAL LENDING SERVICES LLC.   (Assignee) located in WILLIAMSVILLE, NY
the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 18.75 %
per annum from date until maturity in 71 installments of $ 358.65 each and a final installment of $ 358.65, beginning on JUNE, 10 2014 and continuing on the same day of each successive month thereafter until fully paid. All payments shall be applied first to accrued Finance Charge and the balance to principal. The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due. Guarantor, if any, guarantees collection of all amounts due under this contract upon failure of the Seller to collect from the Buyer named herein.

SECURITY INTERESTS: Seller is granted a purchase-money security interest in the motor vehicle described above and all accessions under the Illinois Uniform Commercial Code until the Total of Payments and all future indebtedness for taxes, liens, repairs and insurance premiums advanced by holder hereunder are paid in full. Buyer grants assignee the right of set-off of lien on any moneys, credits or other property of Buyer in possession of the Assignee, on deposit or otherwise, excepting IRA or similar deposits. Seller is also granted a security interest in any premium rebates for insurance or service contracts, if financed hereunder, in the proceeds of any insurance or service contract on the motor vehicle, and in the proceeds of any credit life and/or accident and health insurance financed hereunder, until all amounts due under this contract are paid in full.

ACCELERATION: Buyer agrees that (1) if Buyer shall default in the payment of any installment of the Total of Payments or any other indebtedness due hereon; or (2) Buyer shall fail to perform any agreement or warranty made by Buyer herein; or (3) if the motor vehicle shall be lost, stolen, substantially damaged, destroyed, sold, encumbered, removed, concealed, attached or levied upon; or (4) if the motor vehicle shall be seized or forfeited for violation of any law or ordinance, State, Federal or Municipal; or (5) a proceeding under any bankruptcy or insolvency statute shall be instituted by or against Buyer or Buyer's business, or property, of Buyer shall make an assignment for benefit of creditors; or (6) if Buyer shall die or be adjudged incompetent; or (7) if holder shall, for reasonable cause, deem itself insecure; or (8) if Buyer shall fail to keep the motor vehicle fully insured for the entire term of this contract, the holder may declare all unpaid installments of the Total of Payments and all other indebtedness secured hereby immediately due and payable, without notice or demand, subject to right of reinstatement, if applicable.

PREPAYMENT: THE BUYER MAY PREPAY IN FULL OR IN PART THE UNPAID BALANCE OF THE CONTRACT AT ANY TIME WITHOUT PENALTY.

DELINQUENCY: If any payment is ten (10) days later you will be charged: i) 5% of the installment if the installment is in excess of $200.00; or ii) $10.00 if the installment is for $200.00 or less. In addition, Buyer agrees to pay reasonable attorneys' fees, costs and expenses incurred in the collection or enforcement of the debt or in realizing on the collateral. Buyer agrees to pay Finance Charges after maturity of the final installment, or after acceleration upon default, at the Annual Percentage Rate stated herein so long as there exists any unsecured default hereunder, all without relief from valuation or appraisement laws.

INSURANCE AGREEMENT: Motor Vehicle Damage or Loss Insurance is required by Seller. (Buyer may choose the person through whom the insurance is to be obtained. If such insurance is to be obtained through Seller, the cost for a term of N/A months will be $ N/A.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT

Credit Insurance is not required by Seller nor is it a factor in approval of the extension of credit. No credit insurance is to be provided unless the Buyer signs the appropriate authorization below. Group Credit Insurance is available for the term of the credit upon acceptance by Insurer at the following costs:

Credit Life Insurance $ N/A   Credit Disability Insurance $ N/A

| I desire Credit Life Insurance. | I desire Credit Disability Insurance. | I DO NOT want Credit Life or Disability Insurance. |
|---|---|---|
| N/A N/A N/A | N/A N/A N/A | [signature] 04/26/2014 |
| (Age of Insured) (Signature) (Date) | (Age of Insured) (Signature) (Date) | (Signature) (Date) |
| N/A N/A N/A | N/A N/A N/A | N/A N/A |
| (Age of Insured) (Signature) (Date) | (Age of Insured) (Signature) (Date) | (Signature) (Date) |

SEE REVERSE HEREOF FOR INFORMATION ON POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM.

NOTICE OF PROPOSED GROUP CREDIT LIFE INSURANCE

If a charge is made above for credit life insurance and if such insurance is to be procured by assignee, the undersigned takes notice that the decreasing term insurance written under a Group Credit Life Insurance Policy is to be purchased on the life of the Buyer or Buyers who signed above requesting it, subject to acceptance by the Insurer and issuance of a certificate by
N/A   (Home Office Address) N/A
(Insurer)

The amount of premium is shown above. The term of insurance will commence on the date of this contract and expire on the originally scheduled maturity date of the indebtedness. The initial amount of insurance will be equal to the initial indebtedness and will decrease as any payment is made on the indebtedness in an amount computed by multiplying the amount of the payment by the ratio of initial insurance over the initial indebtedness. The proceeds of any insurance paid will be applied to reduce or extinguish the indebtedness. If insurance is terminated prior to the scheduled maturity date of the indebtedness, any premium refund will be paid or credited promptly to the person entitled thereto. Refund formula is on file with the Director of Insurance and with creditor. All of the foregoing is subject to the provisions of the certificate of insurance to be issued.

Other Insurance: N/A, the cost for a term of N/A months will be $ N/A.
   (Type of Insurance)

BUYER AGREES THAT THE PROVISIONS ON THE REVERSE SIDE HEREOF SHALL CONSTITUTE A PART OF THIS RETAIL INSTALLMENT CONTRACT AND BE INCORPORATED HEREIN. If this contract evidences the sale of a used motor vehicle (1) Buyer acknowledges receipt of the original or a true copy of the "Buyer's Guide" form displayed by Seller on the side window of the used vehicle; and (2) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS USED VEHICLE IS A PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
DOCUMENTARY FEE: A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2008, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

The Annual Percentage Rate may be negotiable with the Seller. If this Contract is assigned, Seller may retain or receive a portion of the Finance Charge.

NOTICE TO BUYER: 1. Do not sign this agreement before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement you sign. 3. Under the law you have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge. Buyer acknowledges receipt of a fully completed copy of this contract executed by both Seller and Buyer. Guarantor, if any, acknowledged receipt of completed copies of this contract and of Explanation of Guarantor's Obligation.

CO-BUYER: A Co-Buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the vehicle or (2) is a parent or spouse of the Buyer, or (3) will be listed as an owner on the vehicle's title. By signing below, (1) I confirm that I will actually receive possession of the vehicle or will use it, or that I am a parent or spouse of the Buyer, or that I will be listed as an owner on the vehicle's title; (2) I agree to be primarily obligated under this contract; and (3) I consent to the Creditor having a security interest in the vehicle.

Dated: APRIL 26, 2014   Buyer(s) acknowledges receipt of a fully completed and executed copy of this Contract.
RETAIL INSTALLMENT CONTRACT

Seller: AL PIEMONTE SUZUKI

By: [signature]   AGENT   Buyer [signature]
   TITLE
Guarantor N/A   Buyer _____

I hereby guarantee the collection of the above described amount upon failure of the seller named herein to collect from the buyer named herein.

INSTRUCTIONS: If parent, spouse, or other person who is or will be listed as an owner on the vehicle's title is a co-buyer, sign above. Other co-signers, sign on the Guarantor line.

Copyright 2011  ILLIANA FINANCIAL, INC., Elmhurst, IL (All Rights Reserved)   ORIGINAL   Form IFI-26 (Rev. 7/11)

## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer or holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successor and assigns.

2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract, is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract without replacement by Buyer within 10 days, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premiums received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interest of Buyer and the holder, or either of them.

3. COLLATERAL PROTECTION INSURANCE. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorneys' fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor is received by holder before disposition of the proceeds, and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. If the Buyer has paid an amount equal to 30% or more of the deferred payment price at the time of repossession, the Buyer may, within 21 days, redeem the collateral from the holder by tendering (a) the total of all unpaid amounts, including any unpaid delinquency or deferral charges due at the time of tender, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due; and (c) any reasonable cost or fees incurred by the holder in the retaking of the goods. Tender of payment and performance in this manner restores to the Buyer his rights under the contract as though no default had occurred. The Buyer has a right to redeem the collateral from the holder only once in this manner. At any time before disposition of the motor vehicle as provided herein, Buyer may redeem it by paying holder all indebtedness secured hereby as well as expenses reasonably incurred by holder in retaking, holding, preparing the motor vehicle for sale, arranging for the sale and reasonable attorneys' fees and legal expenses. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative.

6. Holder is authorized to apply any payment made by Buyer hereon to any other indebtedness of Buyer to holder, whether arising under the contract or otherwise.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. Buyer agrees that if delivery of the motor vehicle is not made at the time of execution of this contract, the identifying number or marks and the due date of the first installment may be inserted by Seller in Seller's counterpart of the contract after it has been signed by Buyer.

9. The terms of this contract are governed by the laws of the State of Illinois. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions thereof.

"NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM."
(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to

GLOBAL LENDING SERVICES LLC        WILLIAMSVILLE, NY
(Name of Assignee)                 (Address of Assignee)

ASSIGNEE, its successors and assigns, all of Seller's right, title and interest in and to the within contract and the motor vehicle described therein. To induce Assignee to purchase said contract, Seller represents and warrants to Assignee (1) that the within contract is valid and genuine and correctly states the terms of the retail installment transaction between Seller and Buyer; (2) that the motor vehicle described has been delivered to and accepted by the Buyer; (3) that the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) that Seller had good title to and the right to sell said motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) that no notice of any defense or right of action has been received by Seller from Buyer nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) that Seller has the right to sell and assign this contract to Assignee; (7) that all buyers have legal capacity to contract; (8) that on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract and to the Guarantor a completed copy of the contract and Explanation of Guarantor's Obligation; (9) Seller has complied with all requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (10) that on the date of the contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the existing Certificate of Title, as the case may be, issued covering said motor vehicle, procured from Buyer a signed application for a new certificate of title to be issued to Buyer and mailed to Assignee showing correctly the date of the within contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State of Illinois all of the documents described with the prescribed fee; (11) that the motor vehicle has not been used as a taxi or for hire or for commercial transportation or by law enforcement agencies; (12) that the sale was made at Seller's place of business and was not a door-to-door sale within the definition of the Federal Trade Commission Trade Regulation Rule or the Illinois Consumer Fraud Act; and (13) that the Seller believes the Buyer to be of good moral character and that Buyer will not use or permit said vehicle to be used for unlawful purposes. If any of the foregoing representations and warranties is breached, Seller agrees to repurchase the within contract for the unpaid balance and all other indebtedness then due from Buyer thereon, together with reasonable attorneys' fees, costs and expenses incurred by Assignee.

Dated: 4/28/14

AP SIMCI
By: _____  AGENT
    Authorized Signature          Title

### REPURCHASE AGREEMENT (Execute Assignment Also)
In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event a claim or defense is asserted against Assignee by the Buyer at any time, Seller shall, on demand, repurchase the within contract for cash at a price equal to the net amount remaining unpaid on said contract; and Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the Manufacturer to Buyer.

Dated: _____

                                    Seller
By: _____
    Authorized Signature          Title

### FULL RECOURSE AGREEMENT (Execute Assignment Also)
In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees prompt and full payment by Buyer of the Total of Payments and all other amounts due from Buyer under the within contract. If Buyer shall fail to pay any installment when due, Seller agrees to pay to Assignee, on demand, the full amount remaining unpaid on said contract. Seller agrees that it shall not be necessary for Assignee to proceed first against Buyer or to have recourse to the motor vehicle before proceeding to enforce this agreement. Extension of the time of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____

                                    Seller
By: _____
    Authorized Signature          Title

### LIMITED REPURCHASE AGREEMENT (Execute Assignment Also)
In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event that Assignee repossesses the motor vehicle described in the within contract on account of default by Buyer and delivers the same to Seller, Seller shall, on demand, repurchase said motor vehicle for cash at a price equal to the amount remaining unpaid on said contract plus all costs and expenses, including attorneys' fees, incurred by Assignee by reason of Buyer's default or in connection with repossession and delivery of the motor vehicle. This repurchase agreement shall remain in effect until Buyer has paid _____ full installments of the Total of Payments. Extension of the time of payment or variation of terms effected with the Buyer shall not release Seller from his obligation hereunder.

Dated: _____

                                    Seller
By: _____
    Authorized Signature          Title

### LIMITED GUARANTEE AGREEMENT (Execute Assignment Also)
In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees that, in the event of default by the Buyer in the full payment of any installment of the within contract when due, Seller will pay to Assignee, on demand, the unpaid balance then due on the contract up to the limit of $ _____. This guarantee shall terminate after Buyer has paid _____ full scheduled installments on the Total of Payments. Extension of the times of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____

                                    Seller
By: _____
    Authorized Signature          Title